UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

WORTH GROUP, INC., and

ANDREW WILSHIRE,

      Petitioner,

                                       CASE NO.

vs.

ROSALYN MORALES,

      Respondent.

_____/

**WORTH GROUP INC.'S AND ANDREW WILSHIRE'S PETITION:
(A) TO COMPEL ROSALYN MORALES TO SUBMIT HER ARBITRATION CLAIM TO
JAMS IN PALM BEACH COUNTY, FLORIDA IN ACCORD WITH THE PARTIES'
WRITTEN ARBITRATION AGREEMENT; OR
(B) TO APPOINT AN ARBITRATOR WITH THE QUALIFICATIONS SET FORTH IN
THE PARTIES' ARBITRATION AGREEMENT AND DIRECT THE PARTIES TO
ARBITRATE IN ACCORD WITH THEIR AGREEMENT; AND
IN EITHER CASE, TO STAY THE ARBITRATION PENDING IN CALIFORNIA**

      Rosalyn Morales agreed that if she had a dispute with Worth Group, Inc. and Andrew

Wilshire: (a) she would submit her claims to JAMS in Palm Beach County, Florida for

arbitration; and (b) a retired Florida federal or state court judge would preside over the

arbitration in Palm Beach County, Florida.   Ms. Morales breached this agreement by

consolidating her claims against Worth Group and Mr. Wilshire into a pending JAMS arbitration

in California where the arbitrator is not a retired Florida federal or state court judge.

      Under the circumstances, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*,

Worth Group and Andrew Wilshire petition this Court to enjoin the California arbitration, and

either: (a) compel Rosalyn Morales to submit her claim to JAMS in Palm Beach County, Florida

in accord with terms of the parties' written arbitration agreement (so the parties can select an appropriate arbitrator and conduct the proceedings in Palm Beach County, Florida), or (b) appoint an appropriate arbitrator (a retired Florida federal or state court judge) and direct the parties to proceed under the arbitration agreement.  In either case, Worth Group and Mr. Wilshire ask this Court to stay the arbitration proceedings pending in California.

1.  Pursuant to a written contract, Rosalyn Morales obtained loans from Worth Group to finance her purchases of silver from another independent company, First National Bullion, LLC ("FNB").  Ms. Morales agreed to arbitrate any disputes with Worth Group or certain affiliated individuals (including Andrew Wilshire) only under specific conditions including:

> (i) She would submit any dispute to JAMS in Palm Beach County, Florida;
>
> (ii) The arbitrator would be a retired member of the Florida Circuit Court or a United States District Court in Florida;
>
> (iii) All arbitration proceedings would occur in Palm Beach County, Florida; and
>
> (iv) The Federal Arbitration Act and Florida law would govern.

2.  Ms. Morales initially breached this agreement by failing to submit her claim to JAMS in Palm Beach County.  Instead, (in a JAMS proceeding she originally submitted against FNB in California under an arbitration agreement she signed with FNB), Ms. Morales asked the arbitrator to add Worth Group as a party.

3.  After completely ignoring the parties' arbitration agreement, the arbitrator: (a) allowed Ms. Morales to amend her complaint, and (b) consolidated the pending FNB dispute and the Worth Group dispute.   Next, the arbitrator, who is not a retired Florida federal or state judge, decided he will preside over the arbitration in California.

4.  Given these rulings, Ms. Morales has continued to breach her arbitration agreement by refusing to arbitrate: (a) with a retired Florida federal or state court judge; and (b) in Palm Beach County, Florida.

5.  As a result, unless this petition is granted, Worth Group will be forced to participate in an arbitration to which it never consented.   In particular, because Ms. Morales never submitted her claim before JAMS in Palm Beach County, Florida, she denied Worth Group the following rights under their arbitration agreement: (a) the ability to select an arbitrator through the JAMS rules (which would have allowed Worth to select from a list of appropriate candidates rather than being required to use a previously selected arbitrator); (b) to have an arbitrator who possesses the qualifications in the parties' arbitration agreement; and (c) to conduct arbitration proceedings in Palm Beach County, Florida.

6.  Under the circumstances, the Federal Arbitration Act grants this Court jurisdiction to enforce Ms. Morales' arbitration agreement.  The Court should enforce the agreement by enjoining the arbitration in California, and either: (a) order Ms. Morales to submit her claim to JAMS in Palm Beach County, Florida (so the parties can select an appropriate arbitrator and conduct the proceedings in Palm Beach County, Florida); or (b) appoint a retired Florida federal or state court judge to arbitrate the dispute under the parties' agreement.  In either case, the Court should stay the California arbitration proceedings.

**Parties, Jurisdiction, and Venue**

7.  Petitioner Worth Group, Inc. is a Florida corporation whose principal place of business is Palm Beach County, Florida.

8.   Petitioner, Andrew Wilshire is a resident of Palm Beach County, Florida, and a citizen of Florida.

9.   Respondent Rosalyn Morales is a resident of San Diego, California, and a citizen of California.

10.  This Court has subject matter jurisdiction over this claim because Worth Group and Mr. Wilshire are both citizens of Florida and Ms. Morales is a citizen of California (i.e., the parties are from different states), and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. *See* 28 U.S.C. § 1332.

11.  Venue is proper in this Court under section 4 of the FAA because the arbitration provision requires that any and all disputes and arbitration proceedings occur in Palm Beach County, Florida. *See* 9 U.S.C. § 4; *Sterling Financial Group, Inc. v. Hammer*, 393 F.3d 1223, 1225 (11th Cir. 2004); *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F. 3d 323, 327 (7th Cir. 1995) ("where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration.") (emphasis in original).

12.  This Court has personal jurisdiction over Ms. Morales because she has "breach[ed] a contract in this state by failing to perform acts required by the contract to be performed in this state." *See* Loan, Security and Storage Agreement between Worth Group and Ms. Morales, ¶ 34 ("You agree that for all purposes you have entered into this Agreement and the making of this Agreement has occurred in Palm Beach County, Florida, notwithstanding any events that may occur outside Palm Beach County, including the manner, timing or location of the delivery or receipt of the acceptance of this Agreement by

any party hereto.  You also agree that the following events, among others, occurred in Palm Beach County, Florida: the negotiation of this contract will have taken place and have been completed in Palm Beach County, Florida; the contract will be executed in Palm Beach County, Florida; WORTH is located in Palm Beach County, Florida; all deposits and payments made by [Ms. Morales] will be delivered to and paid in Palm Beach County, Florida; all loans made by WORTH will be made from and paid in Palm Beach County, Florida; and the written confirmation of each transaction and all statements of account will be generated in and transmitted from Palm Beach County, Florida.").

13. In particular, Ms. Morales breached her agreement with Worth Group by refusing to "submit to final and binding arbitration before JAMS, or its successor, in Palm Beach County, Florida." *See* Fla. Stat. 48.193(9); Loan, Security and Storage Agreement between Worth Group and Ms. Morales, ¶ 35(a).

**Ms. Morales Signs An Arbitration Agreement With Worth Group**

14. Pursuant to a Purchase and Sale Agreement, Ms. Morales purchased silver from First National Bullion, LLC (the "FNB Agreement"). A copy of the Purchase and Sale Agreement is attached as Exhibit 1.

15. To finance her purchase, Ms. Morales borrowed money from Worth Group, a separate and independent company from FNB.  To govern her relationship with Worth Group, Ms. Morales signed a Loan, Security and Storage Agreement which set forth the terms of her loans and the storage of her precious metals ("The Worth Agreement"). A copy of the Worth Agreement is attached as Exhibit 2.

16.     The Worth Agreement includes an arbitration provision which identifies specific requirements for resolving disputes between Ms. Morales and Worth Group (including Mr. Wilshire as Worth Group's shareholder).  The agreement requires: (1) the parties to submit any dispute with JAMS in Palm Beach County, Florida; (2) that all proceedings occur in Palm Beach County, Florida; (3) that all arbitrators be retired judges from Florida Circuit Court or a U.S. District Court in Florida; and (4) that Florida law and the Federal Arbitration Act govern the proceedings.   The relevant portions of the Worth Agreement say:

> **Arbitration of Claims.**  The parties agree that any and all disputes, claims or controversies arising out of or relating to any transaction between or among them or to the breach, termination, enforcement, interpretation, validity or alleged unconscionability of any part of this Agreement shall be subject to and governed by the Federal Arbitration Act and shall be submitted to final and binding arbitration before JAMS, or its successor, in Palm Beach County, Florida.

> **Additional Participants in this Agreement to Arbitrate.**  All shareholders, officers and directors of WORTH, and all employees, representatives, agents and affiliates of WORTH, past present or future, are beneficiaries of, and participants in, this arbitration agreement.  They will have the same rights and obligations under this arbitration agreement as the parties, to the extent that these arbitration agreement beneficiaries are named as respondents.   In any dispute, claim or controversy subject to or arising from this Agreement, or could have been so named.

> **You and WORTH agree that Palm Beach County, Florida is a mutually and reasonably convenient place for any arbitration hearing concerning disputes relating to your transactions with WORTH or to this Agreement and that all arbitration proceedings subject to this Agreement shall occur before the Judicial Arbitration and Mediation Society ("JAMS") in Palm Beach County, Florida.**

> **Arbitrators.**   The parties agree that a single arbitrator shall be selected to adjudicate all disputes unless otherwise provided for in this Agreement.  The selection and replacement of an arbitrator or arbitrators shall be in accordance

with the JAMS Rules, except that: (i) each arbitrator shall be a retired judge of either the Florida Circuit Court or a United States District Court located in Florida, and (ii) any party may require a panel of three neutral arbitrators.

**Arbitration Rules and Fees.**   Except as otherwise provided herein, the arbitration shall be conducted in accordance with the provisions of JAMS Comprehensive Arbitration Rules and Procedures in effect at the time of the Borrower's execution of this Agreement."

Exhibit 2, pg. 6-7,  ¶ 35 (emphasis in original).

### Ms. Morales Breaches The Arbitration Agreement With Worth

17.   In May 2021, Ms. Morales filed a Statement of Claim with the JAMS office in Los Angeles, California and requested the location of any hearing to be San Diego, California. In this Statement of Claim, Mr. Morales named as respondents: First National Bullion, Jonathan Cavuoto, Mark Gonzalez, Celestino Rabbini, and 100 John Does.

18.   In July 2021, Hon. Franz E. Miller (a retired judge from the Orange County, California Superior Court) became the arbitrator for the FNB matter.

19.   In May 2022, instead of submitting a claim against Worth Group before JAMS in Palm Beach County, Florida, Ms. Morales filed a First Amended Statement of Claims with the Los Angeles office of JAMS and requested leave to include Worth Group and Andrew Wilshire as respondents.  In this way, Ms Morales breached the Worth Agreement because she did not submit her claim against Worth Group to JAMS in Palm Beach County, Florida.

### The Arbitrator Ignored the Arbitration Agreement

20.   When it learned of the proposed amendment, Worth Group filed a letter with the arbitrator to object.  Initially, Worth Group explained Ms. Morales' arbitration agreement required

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
One Southeast Third Ave., Suite 2600, Miami, FL  Tel. (305) 361.5500

her to submit her claim to JAMS in Palm Beach County, Florida, and for the proceedings to

occur in Palm Beach County, Florida.  The objection says:

> Ms. Morales' arbitration agreement with Worth Group and Mr. Wilshire
> requires her to submit her claim to JAMS in Palm Beach, Florida, and for the
> proceedings to occur in Palm Beach, Florida.
>
> Specifically, in the Worth Group contract attached as Exhibit 13 to the
> Statement of Claim, Ms. Morales agreed that "any and all disputes, claims or
> controversies arising out of or relating to any transaction between or among
> them or to the breach, termination, enforcement, interpretation, validity or
> alleged unconscionability of any part of this Agreement shall be subject to and
> governed by the Federal Arbitration Act, **and shall be submitted to final and
> binding arbitration before JAMS, or its successor, in Palm Beach County,
> Florida.**" *See* Exhibit 13, ¶ 35(a) (emphasis added).
>
> Ms. Morales also agreed that "all proceedings subject to this Agreement shall
> occur before the Judicial Arbitration and Mediation Society ("JAMS") in
> Palm Beach County, Florida." *See* Exhibit 13, ¶ 34.
>
> Given these explicit terms, Ms. Morales must submit to the Florida JAMS
> office her claim against Worth Group and Mr. Wilshire (who has the same
> arbitration rights as Worth Group by virtue of paragraph 35(b)). The Florida
> JAMS office can appoint an arbitrator to resolve her claim in Palm Beach.
> Florida.

A copy of the objection is attached as Exhibit 3.

21.     After a telephonic conference (during which counsel for Worth Group and Mr. Wilshire

specially appeared solely to object to being included in this arbitration), the arbitrator

determined it was appropriate to allow Ms. Morales' amendment.  The arbitrator further

ordered: "After service has been effectuated, the New Respondents shall, within 15 days

after service, file and serve a formal response and/or formal objections to the amended

claim, including any jurisdictional and/or venue arguments… ."  A copy of the Order is

attached as Exhibit 4.

22. After the amendment, Worth Group filed a motion to dismiss the arbitration.   In this submission, a reply, and during a hearing on the matter, Worth Group explained Ms. Morales was breaching her arbitration agreement which required her to: submit her Statement of Claim to JAMS in Palm Beach County, Florida; to arbitrate only before a "retired judge of either the Florida Circuit Court or a United States District Court located in Florida… ."; and to arbitrate only in Palm Beach County, Florida.

23. The arbitrator denied the motion to dismiss.  As an initial matter, the arbitrator ignored the undisputed fact that Worth Group and Ms. Morales specifically agreed to appoint a retired Florida federal or state judge as their arbitrator.  Next, the arbitrator determined that Worth Group would have to arbitrate its dispute with Ms. Morales in California— again, in direct violation of the Worth Agreement.

24. The arbitrator wrote that "the motions are premised in part on the fallacious notion that the location of the arbitration hearing claimant seeks is jurisdictional.  It is not."  The arbitrator also wrote both parties agreed JAMS would officiate their arbitration, so the only issue presented was whether Ms. Morales would have to arbitrate in two states over the same transaction.  Further, the arbitrator wrote the JAMS rules allow an arbitrator to consolidate multiple arbitrations and then determine the location of the arbitration and override the parties' right to designate an arbitrator.  The arbitrator wrote:

> The parties also appear to agree the FNB agreement specifies disputes will be arbitrated by a JAMS arbitrator in California, and the moving parties' agreement specifies disputes will be arbitrated by a retired judge-JAMS arbitrator in Florida.

Thus, both agreements specify any arbitration will be handled by JAMS. Thus, the issue boils down to whether Morales must endure to arbitration in two states regarding the same transaction.

The arbitrator previously consolidated the two arbitration proceedings. JAMS Comprehensive Arbitration Rules & Procedures, rule 6(e)(iii) provides in relevant part:

"Where a Demand or Demands for Arbitration is or are submitted naming Parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed ....

"Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration."

In this matter, all of the parties agree via their arbitration agreements that any arbitration would be handled by JAMS. In doing so, they agreed, at least implicitly, to be bound by rule 6.

Moreover, JAMS rule 19 give the arbitrator the power, after consulting with the parties (which the arbitrator has done via this motion to dismiss), to "determine the date, time *and location* of the Hearing."

Copy of the Order is attached as Exhibit 5.

25. The arbitrator's ruling ignored and failed to interpret the Worth Agreement in multiple ways.

26. First, even though the arbitrator noted the Worth Agreement and the FNB Agreement were separate contracts, he completely ignored the Worth Agreement. The arbitrator enforced the FNB arbitration agreement against Worth Group. In this way, the arbitrator ignored and failed to interpret the Worth Agreement in its entirety.

27. Second, the arbitrator (a retired California judge) determined he could serve as arbitrator because the Worth Agreement "specifies disputes will be arbitrated by a retired judge-JAMS arbitrator in Florida."  In fact, the Worth Agreement requires "each arbitrator shall be a retired judge of either the Florida Circuit Court or a United States District Court located in Florida."  In this way, the arbitrator again ignored and failed to interpret the Worth Agreement's express terms.

28. Third, the arbitrator never addressed the Worth Agreement's requirement that all of Ms. Morales' claims be "submitted to final and binding arbitration before JAMS, or its successor, in Palm Beach County, Florida.  Once again, the arbitrator ignored and failed to interpret the Worth Agreement's express terms.

29. Fourth, the arbitrator ordered that the arbitration hearing will proceed in California with some or all witnesses to appear by Zoom.   In this way, the arbitrator again ignored and failed to interpret the Worth Agreement's express terms.

30. Fifth, the arbitrator justified ignoring the parties' arbitration agreement based on the JAMS Rules 6 and 19.   According to the arbitrator, these rules allowed him to consolidate arbitrations (after consulting with the parties), and with the consolidation complete, the parties are deemed to have waived their "right to designate an arbitrator as well as any contractual provision with respect to the site of the arbitration."

31. In this way, the arbitrator again entirely ignored the parties' agreement.  Specifically, Ms. Morales agreed the Worth Agreement's provisions would override any JAMS rules if there was a conflict.   The Worth Agreement says: "Except as otherwise provided herein, the arbitration shall be conducted in accordance with the provisions of JAMS Comprehensive

Arbitration Rules and Procedures in effect at the time of the Borrower's execution of this Agreement." Exhibit 2, pg. 6, ¶ 35(d).

32.     The arbitrator also ignored and failed to interpret the specific provision of the Worth Agreement that overrides the JAMS rules regarding the arbitrator's qualifications.   Ms. Morales agreed: "The selection and replacement of an arbitrator or arbitrators shall be in accordance with the JAMS rules, except that: (i) each arbitrator shall be a retired judge of either the Florida Circuit Court or a United States District Court located in Florida." Exhibit 2, pg. 6, ¶ 35(e).

33.     In addition to ignoring and failing to interpret the Worth Agreement, the arbitrator ignored and failed to interpret the JAMS rules themselves.  First, JAMS Rule 6 does not allow the arbitrator to consolidate cases (and by doing so override any agreement regarding the selection of the arbitrator and venue) unless the consolidation is consistent with the parties' agreement and the applicable law. *See* JAMS Rule 6(e) ("**Unless the Parties' Agreement or applicable law provides otherwise**, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:… .") (emphasis added).   In this case, the Worth Agreement requires a retired Florida federal or state judge to arbitrate and arbitration in Palm Beach, Florida.  For these reasons, consolidation is inconsistent with the parties' arbitration agreement.  Again, the arbitrator ignored and failed to interpret these provisions.

34.     Second, the arbitrator ignored and failed to interpret JAMS Rule 2.  This rule requires that the parties' arbitration agreement prevails when there is any conflict with the JAMS rules. JAMS Rule 2 says:

> The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing.  The Party-agreed procedures shall be enforceable as if contained in these Rules.

35.   Worth Group notified the arbitrator of the submission, arbitrator qualification, and venue provisions in the Worth Agreement.   The arbitrator subsequently ignored and refused to interpret these provisions.

36.   Along these lines, the arbitrator ignored and failed to interpret JAMS Rule 4 which requires the arbitrator to follow the applicable law when the rules conflict with the applicable law.   JAMS Rule 4 says: "If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected."

37.   In short, the arbitrator has utterly ignored and failed to interpret the Worth Group Agreement.   He has also placed himself as arbitrator even though he did not follow the parties' agreed selection process, and he does not meet the parties' specified qualifications. By doing so, the arbitrator violated the FAA's express provisions.

**The Federal Arbitration Act Requires this Court
to Enforce the Parties' Arbitration Agreement**

38.   The FAA grants district courts jurisdiction to enforce the terms of arbitration contracts. *See, e.g., AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648-49 (1986).  Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement… .   The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.

39.   Further, when parties fail to abide by other provisions in their arbitration agreements, district courts may stay an inappropriate arbitration proceeding and order the parties to proceed in accord with their agreement. *Sterling Financial Investment Group, Inc. v. Hammer*, 393 F. 3d 1223, 1226 (11th Cir. 2004) ("The district court properly exercised its jurisdiction pursuant to section 4 of the Federal Arbitration Act in staying arbitration in Houston, Texas and compelling arbitration in Boca Raton, Florida.").

**The Court Should Enforce the Parties' Arbitration Agreement by Either:**
**(a) Ordering Ms. Morales to Submit her Claim to JAMS in Palm Beach County, Florida; or**
**(b) Appointing a Retired Florida Federal or State Judge to Conduct the Arbitration Under**
**JAMS Rules in Palm Beach County, Florida.**

40.   Given these circumstances, the Court should enforce the Worth Agreement by either: (a) ordering Ms. Morales to submit her claim to JAMS in Palm Beach County, Florida and have the parties proceed as they agreed; or (b) appoint a retired Florida federal or state court judge to resolve the dispute in Palm Beach County, Florida under the provisions of the Worth Agreement.

**Arbitration Law**

41.   Under the FAA and Florida law, an arbitrator's jurisdiction derives from the parties' arbitration agreement, and the agreement circumscribes the jurisdiction. *See City of Miami v. Ortiz*, 317 So. 3d is 249, 252 (Fla. 3d D.C.A. 2022) ("An arbitrator's authority to conduct an arbitration and the issues to be arbitrated are granted and limited by the operative documents in question or by agreement of the parties themselves."); *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991) ("The power and authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed.").

42.   Because arbitration provisions are contractual obligations, courts must review these provisions and the contracts in general as a matter of contract interpretation. *Seaboard Coast Line Railroad Company v. The Trailer Train Company*, 690 F.2d 1343, 1348 (11th Cir. 1982); *Regency Group, Inc. v. McDaniels*, 647 So. 2d 192, 193 (Fla. 1st D.C.A. 1994). No party may be forced to submit a dispute to arbitration unless the parties agreed and intended to arbitrate. *See Seaboard C. L. R. Co. v. Trailer Train Co.*, 690 F. 2d 1343, 1352 (11th Cir. 1982) (holding that the federal policy favoring arbitration "cannot serve to stretch a contract beyond the scope originally intended by the parties"). *See also Seifert v. United States Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).

43.   Arbitrators simply have no power to exceed their authority. *See Laquer v. Falcone*, 165 So. 3d 19, 22 (Fla. 3d D.C.A. 2019) ("One of the grounds upon which a court must vacate an arbitration award is when 'the arbitrators … in the course of her or his jurisdiction exceeded their powers.'"); Fla. Stat. §682.13(1)(d); *Szuts v. Dean Witter Reynolds, Inc.*,

931 F.2d 830, 832 (11th Cir. 1991) ("Because the arbitrators violated the provisions of the arbitration agreement requiring arbitration before at least three arbitrators, they exceeded their authority under the arbitration agreement. So, we vacate the award of the panel… .")

**This Court Should Enforce The Parties' Agreement
Regarding Selecting the Arbitrator**

44.   Given these general principles and the FAA in particular, the Court should enforce the Worth Agreement's provisions regarding the selection and qualifications of the arbitrator.

45.   Section 5 of the FAA requires parties to honor their arbitration agreements regarding the method for naming and appointing an arbitrator.   Moreover, if a party fails to follow the agreed method for selecting the arbitrator and the counter party requests, the district court must designate an arbitrator in accord with the parties' agreement.  Section 5 says:

> **If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but** if no method be provided therein, or **if a method be provided and any party thereto shall fail to avail himself of such method**, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, **then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein**; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis added).

46.   *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 832 (11th Cir. 1991), explains this point.  Paul and Magda Szuts and Dean Witter agreed that three arbitrators would resolve any dispute they had.   They submitted their dispute to arbitration, but before the case was concluded, one of the arbitrators was disqualified and removed.   As a result, only two

arbitrators considered all of the evidence and rendered the award.  The Eleventh Circuit Court of Appeals vacated the award.

47.  Judge Edmondson explained "[t]he power and authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed."  Consequently, federal courts have the power to vacate arbitrators' awards "where the arbitrators exceed[ ] their powers." *Id*. at 831; 9 U.S.C. §10(d).  The Court held that failing to proceed with three arbitrators violated the arbitration agreement, left the arbitrators without jurisdiction, and rendered their award unenforceable.

Judge Edmondson wrote:

We think the provision of the arbitration agreement that "any arbitration hereunder shall be before at least three arbitrators" means what it says: any contract-related controversy between Szuts and Dean Witter must be arbitrated by no less than three arbitrators.  The provision requires that at least three arbitrators participate in the arbitration by hearing all the evidence presented by the parties; by hearing the arguments presented by the parties; and by participating in the consultation and deliberation among the arbitrators on the decision of the controversy.  These things did not happen here.  The going forward of two arbitrators after a third arbitrator was removed from the panel thus violated the provision of the arbitration agreement that "any arbitration . . . shall be before at least three arbitrators."

*Szuts*, 931 F.2d at 831.

48.  The Court vacated the award and remanded for a new arbitration before three arbitrators. *Id.* at 832 ("Because the arbitrators violated the provisions of the arbitration agreement requiring arbitration before at least three arbitrators, they exceeded their authority under the arbitration agreement.  So, we vacate the award of the panel, and remand for new arbitration proceedings before a panel of three new arbitrators.") (internal citations omitted).

49.   The same rule applies to this case.  When Ms. Morales and Worth Group agreed to have a retired Florida federal or state judge resolve their dispute, they meant what they said. Consequently, the arbitrator does not have the qualifications set forth in the parties' agreement; the arbitrator does not have jurisdiction to proceed; and if he does proceed, any award will be unenforceable.

50.   In this regard, Ms. Morales' failure to file her case in Palm Beach County, Florida created another problem.   With a newly filed case, JAMS would have conducted the JAMS arbitrator selection process under JAMS Rule 15.  The parties would have received a list of retired Florida federal and state judges, and Worth Group and Mr. Wilshire would have been able to exercise strikes against the proposed arbitrators.

51.   Unless this Court intervenes, Worth Group and Mr. Wilshire will also be required to accept an arbitrator without proceeding through the JAMS arbitrator selection process (although Ms. Morales had the opportunity to participate in the arbitrator selection process).   This situation violates the parties' agreement which requires that "The selection and replacement of an arbitrator or arbitrators shall be in accordance with the JAMS Rules… ." *See Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223 (4th Cir. 1994) (vacating an arbitration award when the arbitrators were not selected through the terms in the arbitration agreement); *Avis Rent A Car Sys., Inc. v. Garage Emps. Union, Loc. 272*, 791 F.2d 22, 25 (2d Cir. 1986); ("An arbitrator may have the final say on certain issues that affect the power to enter an award, but an award will not be enforced if the arbitrator is not chosen in accordance with the method agreed to by the parties.").

52. Because Ms. Morales refused and continues to refuse to proceed with an appropriate arbitrator selected in accord with the Worth Agreement, the Court should either order Ms. Morales to submit her claim to JAMS in Palm Beach County, Florida, or select a retired Florida federal or state court judge to conduct the arbitration in accord with the JAMS Rules. In the meantime, the Court should stay the arbitration proceedings in Los Angeles.

**This Court Should Enforce The Parties' Agreement
Regarding Venue**

53. In addition to breaching the agreement by seeking to arbitrate before an inappropriate arbitrator, Ms. Morales breached the arbitration agreement by arbitrating in the wrong venue.

54. *Sterling Financial Investment Group, Inc. v. Hammer*, 393 F. 3d 1223 (11th Cir. 2004), demonstrates how the Federal Arbitration Act requires enforcement of the Worth Group Agreement arbitration clause.

55. Bernard Hammer left his job in Texas to work for Sterling Financial in Florida. Hammer and Sterling Financial signed an employment agreement and a representative agreement which required them to arbitrate in Florida any disputes under the agreements. The employment contract said: "The parties agree that any claim or controversy concerning the terms, conditions or application of this Agreement shall be subject to arbitration pursuant to the National Association of Securities Dealers, Inc. in Boca Raton, Florida." The representative agreement said: "Any disputes between the parties hereto shall be submitted to binding arbitration before the National Association of Securities Dealers with venue being in the State of Florida." *See id.* at 1224.

56.   Hammer's and Sterling Financial's relationship quickly deteriorated, and Hammer quit his job.   He moved to Texas and initiated an arbitration before the National Association of Securities Dealers in Texas.   In response, Sterling Financial asked the National Association of Securities Dealers to move the panel to Florida to comply with the arbitration agreements, but the National Association of Securities Dealers denied the request and assigned the case to a Texas panel.

57.   Sterling Financial sued in federal court in Florida to stay the Texas arbitration and compel arbitration in Florida.   Based on the arbitration agreement's venue provisions, the district court entered the stay and compelled arbitration in Florida.   The Eleventh Circuit affirmed.

58.   Judge Cox began by noting that section 4 of the Federal Arbitration Act requires parties to honor the terms of their arbitration agreements, and grants the federal courts the power to enforce these terms by staying inappropriate arbitrations.   Section 4 says:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. …. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.   The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

59.   Given this rule, Judge Cox explained: "The district court properly exercised its jurisdiction pursuant to section 4 of the Federal Arbitration Act in staying arbitration in Houston, Texas and compelling arbitration in Boca Raton, Florida." *Id*. at 1226.

60.     A subsequent case, *Bamberger Rosenheim, Ltd. v. OA Development Inc. (United States)*,

862 F.3d 1284 (11th Cir. 2017), further illustrates how the arbitrator in this case

disregarded the Worth Agreement's venue clause.   In *Bamberger*, the venue provision

allowed for arbitration in Atlanta or Tel Aviv depending upon the circumstances.   The

arbitrator chose Atlanta, and the Eleventh Circuit affirmed.   Critically, the Court explained

the *Bamberger* arbitrator considered the relevant venue provision, and therefore the

arbitrator's decision would stand.

61.     By contrast, *Bamberger* explains how the *Sterling* arbitrator failed to interpret the

arbitration agreement.   Specifically, the *Sterling* arbitrator reviewed a clause that only

provided for venue in Florida, but the *Sterling* arbitrator still allowed arbitration to proceed

in Texas.   As a result, the Court held the *Sterling* arbitrator could not have interpreted the

contract because the *Sterling* arbitrator clearly disregarded an unambiguous venue

provision:   Judge Melloy wrote:

> In [*Sterling*], we simply held "that a federal district court … has jurisdiction
> to enforce a forum selection clause in a valid arbitration agreement that has
> been disregarded by the arbitrators."   Indeed, by allowing arbitration to
> proceed in Texas, the arbitrator in *Sterling Financial* clearly disregarded an
> unambiguous venue provision that only provided for arbitration in Florida.
> We did not hold that courts should review arbitral-venue provisions de novo;
> in *Sterling Financial*, it could not be said that the arbitrator even arguably
> interpreted the parties' contract.

*Id*. at 1288-89.

62.     By disregarding the parties' unambiguous venue provision, the arbitrator in this case has

directly violated *Sterling* and *Bamberger*.

63.   Ms. Morales and Worth Group agreed to arbitrate in one venue only: Palm Beach County, Florida.  Consequently, when the arbitrator ordered the arbitration to occur in California, he ignored and failed to interpret: (a) the entire Worth Agreement (by applying the FNB Agreement to Worth Group), (b) specific provisions of the Worth Agreement (e.g., the requirement to submit the arbitration and conduct the arbitration in Palm Beach County, Florida, the requirement that the arbitrator be a retired Florida federal or state court judge, and the requirement that the Worth Agreement would prevail whenever it conflicted with the JAMS rules), and (c) the JAMS rules (which specifically indicate that the parties agreement and the applicable law will control if there is a conflict).

64.   In instances like this, district courts have jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by [an arbitrator]." *See Sterling Financial Investment Group, Inc. v. Hammer*, 393 F. 3d 1223, 1225 (11th Cir. 2004); *Bamberger Rosenheim, Ltd. v. OA Development Inc. (United States)*, 862 F.3d 1284 (11th Cir. 2017).

65.   For these reasons, the Court should either order Ms. Morales to submit her claim to JAMS in Palm Beach County, Florida, or select a retired Florida federal or state court judge to conduct the arbitration in accord with the JAMS rules.  Either way, the Court should stay the arbitration proceedings in Los Angeles.

**The JAMS Rules Cannot Change The Parties' Agreement**

66.   Given the parties' contract and the applicable law, it is also clear the arbitrator ignored and disregarded the Worth Agreement when ruling that the JAMS rules allow consolidation of

the claims, and that the consolidation caused Worth Group to waive the arbitrator qualification and venue provisions of the Worth Agreement.

67.  As the U.S. Supreme Court has explained, arbitration is "a creature of contract," and the parties' agreement sets the rules. *See ATT Technologies v. Communications Workers of America*, 475 U.S. 643 (1986).  The Florida Supreme Court has similarly held: "because arbitration provisions are contractual in nature, construction of such provisions and the contracts in which they appear remains a matter of contract interpretation." *See Seifert v. United States Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).  Moreover Florida law favors arbitration and requires enforcement of an arbitration agreement's terms. *See Healthcomp Evaluation Services Corp. v. O'Donnell*, 817 So. 2d 1095, 1097 (Fla. 2nd D.C.A. 2002) ("Agreements to arbitrate are a favored means of dispute resolution.  When there is an enforceable arbitration agreement, the court should require the terms to be followed.")

68.  The Worth Agreement says: "Except as otherwise provided herein, the arbitration shall be conducted in accordance with the provisions of JAMS Comprehensive Arbitration Rules and Procedures in effect at the time of the Borrower's execution of this Agreement." Exhibit 2, pg. 6, ¶ 35(d).

69.  The Worth Agreement further contains a specific provision which overrides the JAMS rules regarding the arbitrator's qualifications.   Ms. Morales agreed: "The selection and replacement of an arbitrator or arbitrators shall be in accordance with the JAMS rules, except that: (i) each arbitrator shall be a retired judge of either the Florida Circuit Court or a United States District Court located in Florida." Exhibit 2, pg. 6, ¶ 35(e).

THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.,
One Southeast Third Ave., Suite 2600, Miami, FL  Tel. (305) 361.5500

70. The arbitrator entirely ignored and failed to interpret these provisions of the Worth Agreement when applying the JAMS rules.

71. The arbitrator ignored the JAMS rules too.

72. While the JAMS rules allow for consolidation and for the arbitrator to set venue after consolidation, the rules specifically prohibit the arbitrator from contradicting the parties' arbitration agreement or the law.

73. First, JAMS Rule 2 allows parties to make agreements regarding how to conduct their arbitration, and Rule 2 requires that any procedures the parties set "shall be enforceable as if contained in these rules."

74. Second, even the consolidation rules are subject to the parties' arbitration agreement and the applicable laws. *See* JAMS Rule 6 ("**Unless the Parties' Agreement or applicable law provides otherwise**, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances.") (emphasis added); JAMS Rule 4 ("If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.").

75. *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830 (11th Cir. 1991), explains that an arbitrator may not elevate a set of arbitration rules over the parties' arbitration agreement.

76. In *Szuts*, the American Arbitration Association rules allowed an arbitration to proceed with fewer than three arbitrators, but the parties agreement required three arbitrators. The Court held this AAA rule could not override the parties' agreement requiring three arbitrators and vacated the award. *Id*. at 832 ("In this case, Dean Witter and Szuts adopted an arbitration

agreement that, while incorporating by reference the AAA Rules, also required arbitration before a panel of at least three arbitrators.  We, thus, conclude that 'the parties agree[d] otherwise,' thus prohibiting the application of the going-forward provision of Rule 20.").

77.   Given *Szuts*, the arbitrator clearly ignored and failed to interpret the Worth Agreement and violated the FAA when he elevated the JAMS rules over the Worth Agreement.

78.   In short, the parties agreed to arbitrate, to file, and to conduct any arbitration in Palm Beach County, Florida before a retired Florida federal or state court judge.  Consolidating this case into the FNB case will violate all of these terms.  Even if the JAMS rules allowed consolidation under these circumstances (and they do not), the JAMS rules cannot override the parties' agreement.

79.   For these reasons, the Court should either order Ms. Morales to submit her claim to JAMS in Palm Beach County, Florida, or select a retired Florida federal or state court judge to conduct the arbitration in accord with the JAMS rules.  Either way, the Court should stay the arbitration proceedings in Los Angeles.

**Conclusion**

80.   Ms. Morales breached her arbitration agreement by: (a) failing to submit her claims to JAMS in Palm Beach County, Florida; (b) insisting on proceeding with an arbitrator who is not a retired Florida federal or state court judge; and (c) insisting on arbitrating in California.  The arbitrator has allowed this breach by ignoring and failing to interpret the parties' arbitration agreement.

81.   For all of the reasons above, the Court should enter an order enjoining the arbitration in Los Angeles, and (a) compelling Ms. Morales to submit her claim to JAMS in Palm Beach

County, Florida; or (b) appointing a retired judge of either the Florida Circuit Court or a United States District Court located in Florida to resolve this dispute under the JAMS rules as modified by the Parties' Agreement.   In the meantime, the Court should stay the arbitration proceedings in California.

Dated: September 6, 2022

Respectfully submitted,

**THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.**
*Counsel for Worth Group, Inc. and Andrew Wilshire*
One Southeast Third Ave., Suite 2600
Miami, Florida  33131
Telephone: (305) 361-5500

By:_____/s/ Stephen James Binhak_____
       Stephen James Binhak, Esq.
       Florida Bar No. 0736491
       binhaks@binhaklaw.com