UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-81372-CANNON/MCCABE

WORTH GROUP, INC., and
ANDREW WILSHIRE,

    Petitioners,

v.

ROSALYN MORALES,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon Respondent's Motion to Transfer or Dismiss ("Motion") (DE 7), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 9). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED.**

**I.    BACKGROUND**

    **A.    The California JAMS Arbitration**

In May 2021, Rosalyn Morales filed a JAMS arbitration claim in California against First National Bullion, LLC ("FNB") and others pursuant to a mandatory arbitration clause (DE 7-3). The claim alleged that Morales, an elderly California woman, hired FNB to provide fiduciary investment advice regarding conservative and secure investments (DE 7-3 ¶ 2). FNB advised Morales to invest in precious metals on margin (DE 7-3 ¶ 4). The claim further alleged that FNB failed to disclose the risks of this investing strategy, which proved unsuccessful, such that Morales was "completely wiped out" (DE 7-3 ¶¶ 4-5). Morales alleged claims for, inter alia, financial elder

abuse, intentional and negligent misrepresentation, and breach of fiduciary duty (DE 7-3 ¶¶ 57-121). Arbitration is currently proceeding before a single JAMS arbitrator in California (DE 7-4).

      **B.**      **Morales Adds Petitioners to the California Arbitration**

As part of her FNB investment, Morales also signed a contract with Worth Group, Inc. ("Worth"), a Florida-based entity owned and controlled by Andrew Wilshire (DE 1-2; DE 7-1 ¶¶ 18-19). Under the contract, Worth agreed to make loans to Morales to finance leveraged purchases of precious metals (DE 1-2 at 2). Morales signed the Worth contract at FNB's San Diego office, along with numerous other documents presented to her by her FNB broker (DE 7-2 ¶¶ 3-5).

In May 2022, Morales filed a First Amended Statement of Claim in the California arbitration, adding Worth and Wilshire (collectively "Petitioners") (DE 7-1). The amended claim alleged that Petitioners served as the architects of the unlawful scheme and the FNB acted merely as one of many affiliates throughout the country who assist Petitioners in perpetrating the same scheme on unsophisticated investors (DE 7-1 ¶¶ 32-42). The amended claim further alleged that the Commodity Futures Trading Commission ("CFTC") previously sued Worth and Wilshire for a similar scheme related to off-exchange leveraged commodities transactions, resulting in a 2016 consent judgment against them (DE 7-1 ¶¶ 27, 29).

      **C.**      **Petitioners Attempt to Dismiss the California Arbitration**

In May or June of 2022, Petitioners moved to dismiss the California arbitration claims against them (DE 1 ¶ 22; DE 1-4 at 2-3). In support, they argued that Morales had signed, as part of the Worth contract, a mandatory arbitration clause that required her to submit to JAMS arbitration in Palm Beach County, Florida, with a retired Florida judge serving as arbitrator (DE 1-3 at 1). Specifically, the Worth contract provided as follows:

**34.** **Location of any Dispute Resolution Concerning this Florida Agreement is Florida.** … You and WORTH agree that Palm Beach County, Florida is a mutually and reasonably convenient place for any arbitration hearing concerning disputes relating to your transactions with WORTH or to this Agreement and that all arbitration proceedings subject to this Agreement shall occur before the Judicial Arbitration and Mediation Society ("JAMS") in Palm Beach County, Florida.

**35.** **Arbitration.**
**a.** **Arbitration of Claims.** The parties agree that any and all disputes, claims or controversies arising out of or relating to any transaction between or among them or to the breach, termination, enforcement, interpretation, validity or alleged unconscionability of any part of this Agreement shall be subject to and governed by the Federal Arbitration Act and shall be submitted to final and binding arbitration before JAMS, or its successor, in Palm Beach County, Florida.

…

**e.** **Arbitrators**. The parties agree that a single arbitrator shall be selected to adjudicate all disputes unless otherwise provided for in this Agreement. The selection and replacement of an arbitrator or arbitrators shall be in accordance with the JAMS Rules, except that: (i) each arbitrator shall be a retired judge of either the Florida Circuit Court or a United States District Court located in Florida, and (ii) any party may require a panel of three neutral arbitrators.

(DE 1-2 at 6).

The California arbitrator denied the motion (DE 1-5; DE 7-4). He reasoned that, since Petitioners and FNB had both agreed to JAMS arbitration, the issue "boil[ed] down to whether Morales must endure arbitration in two states regarding the same transaction" (DE 1-5 at 2; DE 7-4 at 3). The arbitrator then reasoned that JAMS arbitration rules, to which Petitioners had agreed, allowed for consolidation of arbitration proceedings, and further allowed for the arbitrator to determine the location of hearings (DE 1-5 at 2; DE 7-4 at 3). On this basis, the arbitrator denied Petitioners' motion and ruled that all of Morales' claims could proceed in a consolidated California forum, despite the differing language in the Worth contract (DE 1-5 at 2; DE 7-4 at 3).

Petitioners then filed this Petition (DE 1), seeking to compel Morales to file a separate, stand-alone JAMS arbitration claim in Palm Beach County, rather than in California, with a retired

3

Florida judge presiding. Petitioners also ask this Court to stay the ongoing arbitration proceedings against them in California (DE 1 ¶ 79, 81).

## II. ANALYSIS

By way of this Motion, Morales seeks to dismiss the Petition for lack of personal jurisdiction. Alternatively, she seeks transfer to the Southern District of California pursuant to 28 U.S.C. § 1404(a). The Court addresses each request below.

### A. Personal Jurisdiction

This case arises under a petition to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). As explained in *Johns v. Taramita*, 132 F. Supp. 2d 1021, 1024 (S.D. Fla. 2001), the FAA does not authorize nationwide service of process or personal jurisdiction. To determine personal jurisdiction, therefore, this Court must look to Florida's long-arm statute, section 48.193, Florida Statutes. *Id.* at 1027 ("Because 9 U.S.C. § 4 is silent as to service of process or personal jurisdiction, the court must look to Florida's long-arm statute to determine whether personal jurisdiction exists in this case.").

Florida's long-arm statute requires the Court to apply a two-prong test. First, the Court must determine whether the statute itself authorizes personal jurisdiction. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015). Second, the Court must determine whether the exercise of jurisdiction satisfies the Fourteenth Amendment's due process clause, including an analysis of the nonresident defendant's "minimum contacts" with the forum state. *Id.; see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006).

In applying this two-step test, the Court follows a burden-shifting analysis. First, Petitioners bear the initial burden of alleging sufficient facts to make out a prima facie case of

personal jurisdiction. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Next, the burden shifts to Morales to submit affidavit to contradict Petitioners' allegations. *Id.* The burden then returns to Petitioners to produce counter-affidavits supporting personal jurisdiction. *Id.* If possible, the Court must reconcile the affidavits; where the parties' affidavits cannot be reconciled, however, the Court must conduct an evidentiary hearing to resolve the jurisdictional issue. *See Abramson v. Walt Disney Co.*, 132 F. App'x. 273, 275 (11th Cir. 2005) (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989)).

The Court finds no evidentiary hearing necessary in this case. Rather, based on the allegations in the Petition and the parties' respective affidavits, the Court finds Petitioners cannot satisfy the first prong necessary for personal jurisdiction, namely, Florida's long-arm statute does not authorize personal jurisdiction over Morales. In support of personal jurisdiction, Petitioners rely on section 48.193(1)(a)7., Florida Statutes, which provides:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> ...
>
> 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

§ 48.193(1)(a)7., Fla. Stat. Petitioners argue this subsection authorizes personal jurisdiction because Morales breached a contract in this state, i.e. the Worth contract, by "failing to perform acts required by the contract to be performed in this state." Specifically, Petitioners argue Morales breached the Worth contract by failing to file her JAMS arbitration claim in Florida, as required by the contract's arbitration clause.

The Court disagrees. Two other courts in this district have rejected factually similar arguments. In *Johns*, 132 F. Supp. 2d at 1023, for example, two parties entered into a contract to sell a sailing vessel, with a provision calling for mandatory arbitration to take place in Florida in the event of any disputes. When a dispute arose, one of the parties demanded arbitration in Florida, and the other refused. *Id.* at 1024. The disappointed party then moved to compel arbitration in Florida, asserting personal jurisdiction based on the same subsection at issue here, section 48.193(1)(a)7. *Id.* at 1028. The *Johns* court found no jurisdiction, reasoning that the failure to abide by a contract calling for arbitration in Florida, standing alone, cannot satisfy subsection (1)(a)7. of the long-arm statute. *Id.* at 1029. In reaching this decision, the *Johns* court relied upon a Florida Supreme Court case, *McRae v. J.D./M.D., Inc.*, 511 So. 2d 540 (Fla. 1987), which held that parties cannot subject themselves to Florida jurisdiction "merely by contractual agreement." *Id.* at 1028.

In view of the holding of *McRae*, the *Johns* court concluded that "[w]ithout an express recognition by the Eleventh Circuit or Florida courts that Florida's rule can be relaxed in the context of a petition to compel arbitration, the petitioners in this case must show additional grounds to support the court's exercise of personal jurisdiction over the respondent." *Id.* at 1029. Later, another court in this district followed *Johns* under similar factual circumstances, reasoning "[t]his Court agrees with the holding of *Johns* and finds that its rationale and the rationale of *McRae* controls the outcome of this case." *See PHD@western, LLC v. Rudolf Constr. Partners, LLC*, No. 16-80097-CIV-KAM, 2016 WL5661637, at *3 (S.D. Fla. Sept. 30, 2016) (dismissing an action to compel arbitration for lack of personal jurisdiction). This Court likewise agrees with the holdings of *Johns* and *PHD@western*.

Petitioners argue that these cases do not apply for two reasons, both of which the Court finds unpersuasive. First, Petitioners argue *Johns* and *PHD@western* involved *permissive* venue clauses, whereas this case involves a *mandatory* venue clause (DE 8 at 16-17). However, a close inspection of *Johns* shows the venue clause at issue there was mandatory, not permissive. 132 F. Supp. 2d at 1023 ("They finally agreed that any arbitration or litigation would take place in Florida and that Florida law would apply because this forum was mutually inconvenient and neutral."). The same is true as to *PHD@western,* which involved a venue clause that was permissive only as to one of the two parties, i.e., the property "owner." 2016 WL5661637, at *1. Once the property owner demanded Florida venue, which it did, the clause became mandatory as to the other party. *Id.* ("All claims … shall be determined by arbitration … commenced and pursued solely in Palm Beach County Florida … or WAKE County NORTH CAROLINA, *at Owner's option*.") (emphasis added).[1]

Petitioners next argue the Court should reject *Johns* and *PHD@western* in favor of another line of cases, all of which involve nonresidents who breached contracts by failing to perform acts required to be performed in Florida. *See Global Digital Sols., Inc. v. Grupo Rontan Electro*

---

[1] The Court notes that *Johns* and *PHD@western* both rested upon the holding of *McRae*, 511 So. 2d 540, a Florida Supreme Court case that has since been superseded by statute. Specifically, in 2013, the Florida Legislature added a new subsection (1)(a)9. to the long-arm statute, which now authorizes Florida courts to exercise jurisdiction over nonresidents who enter into contracts that comply with sections 685.101 and 685.102, Florida Statutes. These provisions, in turn, authorize personal jurisdiction when parties agree to a contract "which contains a provision by which such person … outside this state agrees to submit to the jurisdiction of the *courts* of this state." § 685.102(1), Fla. Stat. (emphasis added); *see Lienemann v. Cruise Ship Excursions, Inc.*, 349 F. Supp. 3d 1269, 1273 (S.D. Fla. 2018) (discussing the 2013 amendment). In the Court's view, these revisions do not change the operation of the long-arm statute in this case. On its face, section 685.102(1) applies only to contracts whereby nonresidents agree to submit to the jurisdiction of the "courts of this state." § 685.102(1), Fla. Stat. It does not mention arbitration venue. Florida's long arm statute must be "strictly construed." *Fraser v. Smith*, 594 F.3d 842, 852 n.8 (11th Cir. 2010). As such, the Court finds the logic of *Johns* and *PHD@western* continues to hold, even in light of Florida Legislature's enactment of section 48.193(1)(a)9.

7

*Metalurgica, S.A.*, No. 18-80106, 2019 WL 1182822 (May 23, 2019) (finding personal jurisdiction where nonresident breached a contract by failing to close a business transaction in Florida); *Intego Software, LLC v. Concept Dev., Co.*, 198 So. 3d 887 (Fla.1st DCA 2016) (finding personal jurisdiction where nonresident breached a contract by failing to provide its prototypes and end product in Florida); *Betzold v. Auto Club Grp. Ins. Co.*, 124 So. 3d 402, 404 (Fla. 2d DCA 2013) (finding personal jurisdiction where nonresident breached a contract by failing to deliver an affidavit in Florida).

The Court has reviewed Petitioners' cases but finds them unpersuasive. None of Petitioners' cases involve the factual scenario at issue here, namely, an alleged breach by virtue of failing to file an arbitration claim in Florida. The *Johns* and *PHD@western* cases, by contrast, involve that exact scenario. As such, the Court finds *Johns* and *PHD@western* more persuasive.

Having concluded that Petitioners cannot satisfy the first prong of the test for Florida long-arm jurisdiction, the Court need not address the second prong, i.e. "minimum contacts" under the due process clause. The Court recommends the Petition be dismissed for lack of personal jurisdiction over Morales.

**B.     Transfer**

Despite the above recommendation, the undersigned will nevertheless address transfer as an alternative ruling for the sake of completeness and for the benefit of the District Court. Morales seeks transfer to the Southern District of California pursuant to 28 U.S.C. § 1404(a) based on "the convenience of parties and witnesses [and] in the interest of justice." As the moving party, Morales bears the burden to satisfy a two-prong test. First, she must show that the Southern District of California would have been a permissible venue in the first instance. *See Credit Card Fraud Control Corp. v. Cybersource Corp.*, No. 12-81141-CIV, 2013 WL 12094633, at *1 (S.D. Fla. Jan.

31, 2013). Second, she must show that the balance of private and public factors favors transfer. *Id.* The Court addresses each prong below.

### 1. Venue in the Southern District of California

Petitioners argue Morales cannot satisfy the first prong because the FAA restricts venue solely to Southern District of Florida. Petitioners rely on *Merrill, Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323 (7th Cir. 1995), where the Seventh Circuit held that, "where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration." *Id.* at 327 (emphasis in original). The Seventh Circuit based its reasoning on the language of 9 U.S.C. § 4, which provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action … for an order directing that such arbitration proceed in the manner provided for in such agreement. … The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration … is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.*

9 U.S.C. § 4 (emphasis added). In particular, the *Lauer* court focused on the emphasized sentence above, reasoning that the sentence would be "meaningless" unless venue were restricted to the venue specified in the arbitration agreement itself. 49 F.3d at 327.

The Court disagrees with Petitioners' conclusion because the Ninth Circuit – which includes the Southern District of California – takes a different view of 9 U.S.C. § 4. Specifically, in *Textile Unlimited, Inc. v. A..BMH and Co.*, *Inc.*, 240 F.3d 781, 784 (9th Cir.2001), the Ninth Circuit rejected the reasoning of *Lauer* in a case involving a series of contracts for the sale of yarn, whereby the plaintiff sent purchase orders to the defendant, and the defendant responded with order acknowledgments that contained additional terms not included in the purchase orders,

9

including a mandatory Georgia arbitration clause. *Id.* When a dispute arose, the defendant commenced arbitration in Georgia. *Id.* The plaintiff responded by suing in district court in California, seeking to enjoin the Georgia arbitration. *Id.* The district court granted the injunction, over defendant's objections that venue had to lay in Georgia pursuant to the FAA. *Id.*

The Ninth Circuit affirmed, finding venue proper in the California court, notwithstanding the language of the arbitration agreement. *Id.* The Ninth Circuit distinguished the Seventh Circuit's holding in *Lauer*, 49 F.3d at 323, finding it "inapposite" because "the parties [in *Lauer*] did not contest the existence of the arbitration agreement itself." *Id.* at 785 n.1. As the Ninth Circuit explained:

> [O]n its face, § 4 provides that venue is proper for an action to compel arbitration in any United States district court which, save for such agreement, would have jurisdiction under Title 28. That clear expression should end the argument. However, [defendant] asserts that venue any place other than the place of arbitration contractually specified is precluded by the § 4 provision that the hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. However, this interpretation skirts the section's plain language: by its terms, § 4 only confines the *arbitration* to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur. *See Continental Grain Co. v. Dant & Russell*, 118 F.2d 967, 969 (9th Cir.1941).

*Id.* at 785 (emphasis in original) (cleaned up).

Given that the parties in *Textile* disputed the validity of the arbitration clause, the Ninth Circuit reasoned that a venue provision buried within a disputed agreement could not dictate venue under 9 U.S.C. § 4. *Id.* The Court held:

> The venue clause on [defendant's] forms, limiting venue to Fulton County, Georgia, does not control this [venue] issue. Like the arbitration clause, the question of whether this clause is a part of the contract between the parties is at issue.
>
> This result is consistent with the underpinnings of arbitration theory. One of the threads running through federal arbitration jurisprudence is the notion that arbitration is a matter of contract and a party cannot be required to submit to

10

> arbitration any dispute which he has not agreed so to submit.  Requiring a party to contest the very existence of an arbitration agreement in a forum dictated by the disputed arbitration clause would run counter to that fundamental principle.

*Id.* at 786 (cleaned up).  The same logic would apply here, where Morales disputes the enforceability of the arbitration venue selection clause within the Worth contract.

Although the *Textile* decision concerned a motion to *enjoin* arbitration, other district courts in the Ninth Circuit have applied its reasoning to motions to *compel* arbitration as well.  *See, e.g.*, *Grinberg v. CareVoyant, Inc.*, No. CV-10-08350-RGK, 2011 WL 13217585, at *2 (C.D. Cal. Feb. 15, 2011) (citing *Textile* for the proposition that "the FAA does not require that an action to compel or enjoin arbitration be brought in the district designated in the arbitration clause"); *Larson v. Speetjens*, No. C 05–3176 SBA, 2006 WL 3365589, *4 (N.D. Cal. Nov. 17, 2006) ("[Defendants] cite several out-of-circuit district court cases in which actions were transferred to the district specified in the place-of-arbitration clause.… That is not the Ninth Circuit approach."); *see also Mastro v. Momot*, No. CV-09-01076-PHX-ROS, 2009 WL 1993772, at *4 (D. Ariz. July 9, 2009) (discussing the distinction between the Ninth and Seventh Circuit views, noting that the Ninth Circuit has "perhaps implicitly criticized" the Seventh Circuit approach).

Given the Ninth Circuit view of 9 U.S.C. § 4, the Court finds that Petitioners could have filed this case in the Southern District of California at the outset.  Morales therefore satisfies the first prong of the two-prong test for transfer.  *See Credit Card Fraud Control Corp.*, 2013 WL 12094633 at *1.

### 2. Balance of Public & Private Factors

Second, Morales must show that the balance of private and public factors favors transfer. *See id.*  The private and public factors include (1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of

operative facts; (5) the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  *See Manuel v. Convergys Corp.*, 430 F. 3d 1132, 1135 n.1 (11th Cir. 2005).  Transfer should only be granted where the balance of factors strongly favors transfer. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996) (holding that plaintiff's choice of forum should not be disturbed unless it is "clearly outweighed" by other considerations).

Here, the Petition requires the court to resolve whether Morales entered into a binding arbitration agreement with mandatory Florida venue, whether the ongoing California arbitration should be stayed, and whether Morales should be compelled to file a separate, stand-alone arbitration in Florida (DE 1).  The Court finds the balance of factors strongly favors transfer to the Southern District of California to resolve these issues.  These factors include:

- Morales signed the Worth contract with her FNB broker in the FNB offices in San Diego, California (DE 7-2 ¶¶ 2, 5).  No other witnesses were present, and Morales had no communications or meetings with Petitioners, in Florida or anywhere else, at any time (DE 7-2 ¶ 6).

- As such, the relevant witnesses, documents, and other sources of proof will be found in California, and the Court therefore finds California to be the locus of operative facts.

- California also offers a better ability to compel the attendance of unwilling witnesses, if any, given that all relevant witnesses will be found in California.

- The relative means of the parties favors transfer.  According to her arbitration claim, Morales is an elderly woman who was "completely wiped out" as a result of the

        FNB-recommended investments (DE 7-3 ¶¶ 2, 4-5).

- The convenience of the parties is a neutral factor. Florida is inconvenient to Morales, while California is inconvenient to Petitioners.

- The governing law is also a neutral factor. Although the Worth contract provides for application of Florida law applies (DE 1-2 at 6), this provision will not govern contract formation because "applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp.3d 1252, 1259 (S.D. Fla. 2021). Instead, each court, whether the Southern District of California or the Southern District Florida, would look to its own respective state law to decide choice-of-law issues with respect to contract formation.

The Court has also considered the deference to be afforded to Petitioners' choice of forum. However, the Court finds this factor to be clearly outweighed by the other factors discussed above. For all of these reasons, the totality of the circumstances, as well as the interests of trial efficiency and justice, strongly favor transfer to the Southern District of California. *See Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*, No. 14-CIV-22652, 2015 WL 224952, at *7 (S.D. Fla. Jan. 15, 2015) (granting motion to transfer to California because the "core of activity" occurred there and was considered to be the "center of gravity" of the dispute).

## III. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned **RECOMMENDS** that the Motion be **GRANTED** (DE 7) and that this case be dismissed for lack of personal jurisdiction. Alternatively,

the undersigned **RECOMMENDS** that the action be **TRANSFERRED** to the Southern District of California.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1; *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE and RECOMMENDED** in Chambers at West Palm Beach in the Southern District of Florida, this 2nd day of December 2022.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE