UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-81372-CIV-CANNON/McCabe

**WORTH GROUP, INC.**, and
**ANDREW WILSHIRE**,

    Petitioners,
v.

**ROSALYN MORALES**,

    Respondent.
_____/

## ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DISMISSING CASE

**THIS CAUSE** comes before the Court upon Respondent's Motion to Transfer or Dismiss the Petition to Enforce Arbitration (the "Motion") [ECF No. 7], filed on October 28, 2022.  On December 2, 2022, following referral [ECF No. 9], Magistrate Judge McCabe issued a Report with two recommendations: first, dismiss the case for lack of personal jurisdiction, and second, in the alternative, transfer the case to the U.S. District Court for the Southern District of California under 28 U.S.C. § 1404 [ECF No. 13].  Petitioners timely filed Objections to the Report [ECF No. 14], to which Respondent filed a Response [ECF No. 15].  The Court has reviewed the Report and the entire record [ECF Nos. 7, 8, 10, 13, 14, 15].  For the reasons set forth below, the Report [ECF No. 13] is **ACCEPTED**, and the petition is **DISMISSED** for lack of personal jurisdiction. The Court does not address Judge McCabe's alternative recommendation to transfer this case to the U.S. District Court for the Southern District of California.

### RELEVANT BACKGROUND

In May 2021, Respondent filed a JAMS arbitration claim in California against First National Bullion, LLC ("FNB") and four individuals [ECF No. 7-3].  Respondent brought eight

claims based on fraud, elder abuse, and breach of fiduciary duty arising out of a contractual relationship during which FNB assisted Respondent in investing in precious metals on margin [ECF No. 7-3 ¶¶ 57–121]. The contract between FNB and Respondent contained a mandatory arbitration clause that required Respondent to submit any claims against FNB to binding arbitration before JAMS in San Diego County, California [ECF No. 7-3 ¶ 9]. When Respondent signed her contract with FNB in San Diego, she also contemporaneously signed a separate contract with Petitioner Worth Group, Inc. ("Worth Group"), which is owned and controlled by Petitioner Andrew Wilshire [ECF No. 1-2; ECF No. 7-1 ¶¶ 18–19]. Under the terms of the Worth Group contract, Worth Group agreed to make loans to Respondent to finance leveraged purchases of precious metals [ECF No. 1-2 ¶¶ 2–2.1]. The Worth Group contract contained its own mandatory arbitration clause requiring Respondent to submit any claim against Worth Group to JAMS arbitration in Palm Beach County, Florida, with a retired Florida judge serving as arbitrator [ECF No. 1-2 ¶¶ 34–35]. According to Respondent, she was unaware that she signed a contract with Worth Group or that she was financing her purchase of precious metals [ECF No. 7-2 ¶ 5].

In May 2022, one year after initiating arbitration proceedings against FNB in California, Respondent filed an Amended Statement of Claims to add Worth Group and Wilshire as respondents in the California arbitration proceeding [ECF No. 7-1]. The Amended Statement of Claims filed in that proceeding alleges that Petitioners are the masterminds behind the unlawful scheme that defrauded her, and that FNB is merely one of Petitioners' many affiliates throughout the country who assist Petitioners in defrauding unsophisticated investors like Respondent [ECF No. 7-1 ¶¶ 32–42]. The Amended Statement of Claims also alleges that the United States Commodity and Futures Trading Commission previously sued Petitioners for a similar scheme, resulting in a 2016 consent judgment against Petitioners [ECF No. 7-1 ¶¶ 27, 29].

CASE NO. 22-81372-CIV-CANNON/McCabe

After Respondent filed her Amended Statement of Claims in the California arbitration, Petitioners moved to dismiss the claims against them pursuant to the arbitration clause in the Worth Group contract [ECF No. 1 ¶ 22]. The arbitrator [ECF No. 1 ¶ 18] denied the motion, reasoning that because Worth Group, Wilshire, and FNB all had agreed to JAMS arbitration, the issue "boil[ed] down to whether [Respondent] must endure arbitration in two states regarding the same transaction" [ECF No. 1-5 p. 2; ECF No. 7-4 p. 3]. Addressing that issue, and recognizing the relatedness of the two arbitration proceedings, the arbitrator determined that all of Respondent's claims could proceed in a consolidated arbitration in California despite the language in the Worth Group contract requiring Respondent to submit her claims to JAMS arbitration in Florida [ECF No. 1-5 p. 2; ECF No. 7-4 p. 3 (relying on JAMS arbitration rules allowing for consolidation of proceedings and giving arbitrator power to determine the location of proceedings)]. Within one week of the arbitrator's decision, Petitioners filed this Petition seeking injunctive relief, asking the Court to stay the California arbitration and either (1) compel Respondent to submit her claim to JAMS in Palm Beach County, Florida or (2) appoint a retired Florida federal or state court judge and direct the parties to proceed under the arbitration agreement in the Worth Group contract [ECF No. 1 p. 1–2].

Respondent then filed the instant Motion [ECF No. 7], arguing that the Petition either should be transferred to the U.S. District Court for the Southern District of California under 28 U.S.C. § 1404(a) or dismissed for lack of personal jurisdiction. Respondent contends that Florida's long-arm statute does not authorize jurisdiction over a party to a contract merely because the contract contains a clause establishing Florida as the venue for arbitration [ECF No. 7 pp. 10–12]. Petitioners resist that position, asserting that Section 48.193(1)(a)(7) of Florida's long-arm statute allows a Florida court to exercise personal jurisdiction over a party who has "[b]reach[ed] a contract in [Florida] by failing to perform acts required by the contract to be performed in

3

[Florida]." Fla. Stat. § 48.193(1)(a)(7). That is the case here, Petitioners say, because Respondent breached the Worth Group contract by failing to submit Respondent's claims against Petitioners to JAMS arbitration in Palm Beach County, Florida [ECF No. 8 pp. 13–14]. In Reply, Respondent reaffirms its position that Section 48.193(1)(a)(7) does not confer personal jurisdiction in a case like this one, where the sole basis offered to support personal jurisdiction under the long-arm statute is a party's refusal to abide by a mandatory arbitration clause in a contract [ECF No. 10 pp. 2–4 (citing *Johns v. Taramita*, 132 F. Supp. 2d 1021 (S.D. Fla. 2001); and (2) *PHD@western, LLC v. Rudolf Constr. Partners, LLC*, No. 16-80097-CIV, 2016 WL 5661637 (S.D. Fla. Sept. 30, 2016))].

Following referral, Judge McCabe issued a Report agreeing with Respondent that Section 48.193(1)(a)(7) does not confer personal jurisdiction over Respondent under the circumstances presented [ECF No. 13 pp. 5–8]. Petitioners filed timely Objections to the Report, to which Respondent filed a Response [ECF Nos. 13, 14, 15]. The Report is ripe for adjudication.

**LEGAL STANDARD**

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews *de novo* those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed *de novo*, even in the absence

of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

"Because federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons, a federal court sitting in Florida must conduct a two-step inquiry to determine whether it has personal jurisdiction over [a] non-resident defendant." *Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*, No. 15-CV-62104, 2016 WL 1028332, at *2 (S.D. Fla. Mar. 15, 2016) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014)). Specifically, a federal court sitting in Florida must consider (1) whether personal jurisdiction exists over the non-resident defendant under Florida's long-arm statute, and (2) whether the exercise of that jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)). Florida's long-arm statute is to be strictly construed, and Petitioners bear the burden of proving personal jurisdiction. *See generally Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996); *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir. 1983); *Fraser v. Smith*, 594 F.3d 842, 852 n.8 (11th Cir. 2010). If personal jurisdiction is improper under either Florida's long-arm statute or the U.S. Constitution, then the court lacks jurisdiction over the non-resident defendant.

**DISCUSSION**

Petitioners move under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, for an order compelling Respondent to submit her claim to arbitration in Florida in accordance with a venue provision in a written arbitration agreement [ECF No. 1; *see* ECF No. 1-2 ¶¶ 34–35 (agreeing that the "[l]ocation of any dispute resolution concerning this Florida Agreement is Florida," and further specifying that "any and all disputes . . . shall be submitted to final and binding arbitration before

JAMS . . . in Palm Beach County, Florida")]. Respondents move to transfer or dismiss the petition for lack of personal jurisdiction [ECF No. 7]. Petitioners rely only upon Section § 48.193(1)(a)(7) of Florida's long-arm statute to establish personal jurisdiction.

For the reasons stated in the well-reasoned Report [ECF No. 13]—and mindful of the need to construe Florida's long-arm statute strictly in accordance with Florida law as it stands now—the Court determines that Respondent's decision to file an arbitration claim in California rather than in Florida as required by the venue clause in the Worth Group contract is not by itself sufficient to give this Court personal jurisdiction over Respondent under Section 48.193(1)(a)(7) of Florida's long-arm statute. This conclusion flows from the available Florida Supreme Court authority on the subject, namely, *McRae v. J.D./M.D., Inc.*, 511 So. 2d 540 (Fla. 1987). In that case, the Florida Supreme Court held that Florida's long arm statute, *see* Fla. Stat. § 48.193 (1987), did not confer personal jurisdiction over a party to a contract solely because the contract contained a forum selection clause designating Florida as the venue for litigation. *Id.* at 542 (holding that "a forum selection clause, designating Florida as the forum, cannot operate as the sole basis for Florida to exercise personal jurisdiction over an objecting non-resident defendant"). Although the position of the parties in *McRae* is not a full match to the circumstances here, and although the Florida legislature subsequently superseded *McRae* by expanding personal jurisdiction for parties consenting contractually to venue in Florida *courts*, *see* Fla. Stat. § 493.193(1)(a)(9), *McRae* still provides the best available guidance from Florida's highest court on the exercise of personal

jurisdiction where the sole asserted basis for doing so is a Florida venue provision in an arbitration agreement as we have in this case. [1] [2]

The Report also relies on two persuasive authorities from this district, both applying *McRae* and dismissing for lack of jurisdiction in similar circumstances. In *Johns*, two parties entered into a contract with a provision calling for mandatory arbitration to take place in Florida in the event of a dispute. 132 F. Supp. 2d at 1023. Once a dispute arose, however, one party refused to submit to arbitration in Florida and decided to pursue arbitration in Puerto Rico instead. *Id.* at 1024. The other party moved to compel arbitration in Florida, asserting that the court had personal jurisdiction under Section 48.193. *Id.* at 1028–29. The *Johns* court disagreed, relying on *McRae*, and ultimately concluding that the arbitration "forum selection clause [was] insufficient to establish personal jurisdiction over the respondent" under Florida's long-arm statute. *Id.* at 1031. Similarly, in *PHD@western*, citing *McRae* and *Johns*, the court determined that a party's "failure to comply with [a] forum selection clause" for arbitration does not alone "provide a basis for [a Florida court] to have personal jurisdiction" over that party. 2016 WL 5661637, at **2–3.

---

[1] In *McRae*, the party challenging personal jurisdiction did not initiate a lawsuit, whereas the party who challenges personal jurisdiction here (Respondent) initiated an arbitration claim in another jurisdiction. In either scenario, however, the objecting party evidenced its refusal to abide by the terms of the arbitration venue clause to which it agreed.

[2] In 2013, in response to *McRae*, the Florida Legislature amended Florida's long-arm statute by adding subsection (1)(a)(9). That added subsection, Section 48.193(1)(a)(9), authorizes Florida courts to exercise specific jurisdiction over nonresidents who enter into contracts that contain a provision by which such person "agrees to submit to the jurisdiction of the *courts* of this state [Florida]." Fla. Stat. § 489.193(1)(a)(9) (incorporating Fla. Stat. § 685.102(1) (emphasis added)). Petitioners concede that Section 48.193(1)(a)(9) does not grant this Court personal jurisdiction over Respondent [ECF No. 8 pp. 15–16]. Because the Florida Legislature did not amend the long-arm statute to confer personal jurisdiction where a nonresident enters into a contract that establishes Florida as the venue for arbitration, the Florida Supreme Court's holding in *McRae* still applies to Section 48.193(1)(a)(7), as indicated in *Johns* and *PHD@western*.

Guided by these authorities, and given the absence of additional express guidance from Florida courts on the scope of personal jurisdiction in the situation presented, the Court construes Florida's long-arm statute strictly and agrees with the Report's recommendation to dismiss for lack of personal jurisdiction. In determining as much, the Court has considered Petitioners' objections, both of which reiterate arguments presented to and considered by Magistrate Judge McCabe. Petitioners argue, for example, that *Johns* and *PHD@western* are inapplicable because the arbitration clauses in those cases were *permissive* as opposed to *mandatory* venue clauses. Petitioners also urge the Court to reject *Johns* and *PHD@western* in favor of a separate line of cases involving non-residents who breached contracts by failing to perform acts required to be performed in Florida [ECF No. 8 pp. 14, 16–17; ECF No. 13 pp. 7–8; ECF No. 14 pp. 7–9].[3] Neither objection counsels a different result than the one reached in the Report. As the Report indicates, the venue clauses at issue in both *Johns* and *PHD@western* were mandatory clauses as applied to the respondents in those cases [ECF No. 13 p. 7]. And as to the second objection, although Petitioners' argument is not without some appeal, the Court agrees with the Report that none of the alternative cases offered by Petitioners deal with the factual scenario at issue here—a breach by virtue of failing to file an arbitration claim in Florida, without any other act required to be performed in Florida [ECF No. 13 p. 8]. In the end, Petitioners assert personal jurisdiction based on Section 48.193(1)(a)(7) alone, but that provision, strictly construed, does not confer personal jurisdiction over Respondent based solely on Respondent's failure to abide by a venue clause in an arbitration agreement.

---

[3] *See Global Digital Sols., Inc. v. Grupo Rontan Electro Metalurgical, S.A.*, No. 18-80106-CIV, 2019 WL 11828222 (S.D. Fla. May 23, 2019) (nonresident breached a contract by failing to close a business transaction in Florida); *Intego Software, LLC v. Concept Dev., Co.*, 198 So. 3d 887 (Fla. Dist. Ct. App. 2016) (nonresident breached a contract by failing to provide prototypes and end product in Florida); *Betzold v. Auto Club Grp. Ins. Co.*, 124 So. 3d 402, 404 (Fla. Dist. Ct. App. 2013) (nonresident breached contract by failing to deliver an affidavit in Florida).

CASE NO. 22-81372-CIV-CANNON/McCabe

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 13] is **ACCEPTED**.

2. Respondent's Motion to Transfer or in the Alternative to Dismiss [ECF No. 7] is **GRANTED**.

3. The Petition to Enforce Arbitration [ECF No. 1] is **DISMISSED** for lack of personal jurisdiction.

4. The Clerk shall **CLOSE** this case. Any scheduled hearings are **CANCELED**, any pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 26th day of January 2023.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　AILEEN M. CANNON
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

cc:　　counsel of record